IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHANTRELL GOFF,
*Plaintiff*,

v.

Civil Action No. ELH-20-2038

CALIBER HOME LOANS, INC.,
*Defendant*.

**MEMORANDUM OPINION**

In this debt collection case, plaintiff Shantrell Goff filed a "Class Action Complaint & Request for Jury Trial" in the Circuit Court for Anne Arundel County against defendant Caliber Home Loans, Inc. ("Caliber"). ECF 1-2 at 2 (the "Complaint"). Caliber timely removed the suit to federal court. *See* ECF 1 (the "Notice of Removal" or "Notice").[1]

The Complaint contains three counts, each founded on Maryland law. Count I, lodged on behalf of plaintiff and a putative class, alleges that Caliber, a mortgage servicer, collected "unlawful convenience fees," in violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code (2013 Repl. Vol.), § 14-201 *et seq.* of the Commercial Law Article ("C.L."), as well as the Maryland Consumer Protection Act ("MCPA"), C.L. §§ 13-101 *et seq.* ECF 1-2 at ¶¶ 63-77. Count II, also lodged on behalf of plaintiff and a putative class, alleges that Caliber assessed unlawful convenience fees, in violation of C.L. § 12-105(d) ("Maryland Usury Statute" or "Usury Statute"). *Id.* ¶¶ 78-84. Count III, lodged by plaintiff in her individual capacity,

---

[1] Suit was filed on June 3, 2020. A defendant has thirty days from the date of service or receipt of the initial pleading to file a notice of removal. 28 U.S.C. § 1446(b). Here, Caliber was served on June 12, 2020, *see* ECF 7, and removed the case on July 10, 2020. ECF 8.

asserts other violations of the MCPA, C.L. §§ 13-101 *et seq.* Count Three "does not involve or concern the disputed convenience fees." *Id.* ¶ 85.

The Notice of Removal asserts subject matter jurisdiction based on diversity, pursuant to 28 U.S.C. § 1332, and under the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. 109–2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code). As to CAFA, the Notice invokes 28 U.S.C. §§ 1332(d), 1453. ECF 1 at 1, 3, 5.

Ms. Goff has moved to remand (ECF 11), supported by a memorandum. ECF 11-1 (collectively, the "Motion to Remand" or "Motion").[2] Plaintiff claims that "Caliber has failed to carry its burden" to demonstrate that the Court has subject matter jurisdiction. ECF 11 at 1. In particular, plaintiff contends that Caliber has not shown that the jurisdictional amount-in-controversy requirement has been satisfied for either diversity jurisdiction or CAFA. ECF 11-1 at 11-16. In the alternative, plaintiff filed a separate motion to request the opportunity to conduct "limited jurisdictional discovery" if the Court determines that the Notice sufficiently alleges jurisdiction based upon CAFA. ECF 12 (the "Discovery Motion"); *see* ECF 11-1 at 16.

Caliber opposes both motions. Defendant filed two versions of its Opposition: a redacted version (ECF 16) and an unredacted version (ECF 17), accompanied by six exhibits. ECF 16-1 to 16-6.[3] Plaintiff replied. ECF 22.

---

[2] On July 14, 2020, plaintiff filed a "Motion for Extension of Time to File Motion to Remand & Request for Limited Jurisdictional Discovery." ECF 3. As a result, the Court held a telephone conference with counsel on July 16, 2020. *See* Docket, July 20, 2020. Plaintiff filed the Motion to Remand the next day.

[3] The two versions of the Opposition are identical save for two sentences on page 15 that are redacted in ECF 16. I shall cite to ECF 16, unless otherwise noted. Two exhibits (ECF 16-3 and ECF 16-4) were filed under seal. *See* ECF 19; ECF 20.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the motions.

### I.        Background

### 1.        Factual Background[4]

In August 2016, Ms. Goff acquired property in Clinton, Maryland, with the aid of a loan from Caliber.  ECF 1-2, ¶¶ 9, 16.  Caliber "is a collector and a licensed mortgage servicer in the State of Maryland."  *Id.* ¶ 10.  Plaintiff alleges that Caliber "voluntarily elected to arrange and service" her loan.  *Id.* ¶ 17.

With respect to so-called "convenience fees," plaintiff alleges the following, *id.* ¶¶ 19-20:

19.    The Goff Loan does not permit Caliber to charge convenience fees for accepting payments from Goff related to the Goff Loan by telephone or by the Internet.

20.    Notwithstanding that there is no written agreement between Goff and Caliber for Caliber to impose and collect convenience fees from Goff, Caliber has done so without the right to do so.  Specifically, Caliber has imposed and collected Goff convenience fees for collecting her payments on the Goff Loan over the internet . . . .

Caliber allegedly "imposed and collected" convenience fees from Ms. Goff on twelve dates between July 16, 2018 and July 19, 2019.  *Id.* ¶ 20.  Ms. Goff characterizes the convenience fees as follows, *id.* ¶ 2.b:

[A]n unlawful profit center imposed and collected by Caliber and [] not simply pass-through costs to Goff and the putative class members.  Rather, they represent materially excessive sums over Caliber's actual costs to accept a fee by electronic means over the phone or over the Internet.  Specifically, Caliber's actual costs to its various vendors who facilitate the telephonic and electronic payments charge pennies for the transaction, but Caliber imposes fees ranging from 10 to 50 times more than its actual costs.

---

[4] For purposes of the Motion, the Court shall assume the truth of the factual allegations in the Complaint.

Other factual allegations in the Complaint concern Ms. Goff's interactions with Caliber regarding her loan payments. *See id.* ¶¶ 22-46. At this juncture, it is not necessary to include a full recitation of these factual allegations. But, some background is useful to understand the dispute.

Plaintiff alleges that in 2019 she "became aware that she would have a reduction of income and was in imminent default." *Id.* ¶ 22. She contacted Caliber by phone "on or about June 20, 2019 and asked Caliber if she could enter into an agreement with it to reduce and defer the sums due on" her loan. *Id.* In response, "Caliber's personnel unfairly claimed . . . that [Ms. Goff] could not be considered for loss mitigation or a loan modification based upon her imminent default but that she had to be in actual default." *Id.*

On or about July 2, 2019, plaintiff defaulted on her loan obligation. *Id.* ¶ 24. Plaintiff asserts that, in reliance on the information she received on June 20, 2019, she submitted a "facially complete loss mitigation which Caliber acknowledged in writing . . . ." *Id.* Thereafter, "Caliber's representatives contact[ed] Ms. Goff from time to time . . . to request additional information." *Id.* ¶ 25. According to plaintiff, some of those requests "were not actually relevant or material to [her] application." *Id.* ¶ 26; *see id.* ¶ 25.

On October 28, 2019, Caliber sent plaintiff a "form denial letter" that "claimed that Ms. Goff did not provide . . . all of the documents needed to support her . . . loss mitigation application." *Id.* ¶ 27. According to plaintiff, the letter "concealed . . . that she was entitled to appeal Caliber's denial of her . . . loss mitigation application pursuant to 12 C.F.R. § 1024.41(h) and [she] did not learn she had any such right to appeal until February 2020." *Id.*

Between November 2019 and March 2020, Ms. Goff engaged in similar exchanges with Caliber. *See id.* ¶¶ 30-34, 38-39. That is, according to plaintiff, Caliber twice notified plaintiff of

"loss mitigation options"; plaintiff attempted to pursue such options by submitting relevant paperwork; and then defendant notified plaintiff that she was ineligible for assistance. *See id.* ¶¶ 30-34, 38-39. On April 24, 2020, plaintiff appealed the third denial of assistance, which Caliber denied the following month. *Id.* ¶¶ 40-42.

Plaintiff claims that defendant "wrongfully and prematurely steered her . . . toward foreclosure while she . . . [was] seeking to pursue loss mitigation alternatives to avoid foreclosure." *Id.* ¶ 3. Ms. Goff alleges that defendant began pursuing foreclosure on the mortgaged property in November 2019. *See id.* ¶¶ 29, 33, 35.

### 2. Procedural Background

In Count I of the Complaint, Ms. Goff asserts violations of the MCDCA and the MCPA. She alleges that Caliber's imposition and collection of "unlawful convenience fees for accepting payments by telephone and/or [over] the Internet" violated the MCDCA, §§ 14-202(8), 14-202(11), and constituted unfair and deceptive trade practices, in violation of the MCPA. §§ C.L. 13-301(1)(3), 13-303(4)(5); *see* ECF 1-2, ¶¶ 66-69, 74.[5]

The claim is lodged on behalf of the putative "MCDCA Class" as well as in plaintiff's individual capacity. *See id.* ¶¶ 63, 69. The Complaint defines the putative "MCDCA Class" as follows, *id.* ¶ 47(b):

> All individuals in Maryland who since October 1, 2018 (i) paid a "convenience fee," (ii) collected in whole or in part by Caliber, (iii) in order to make a payment on a residential mortgage debt, and (iv) where the term "convenience fee" was not specifically enumerated in the original agreement creating such debt.

---

[5] Curiously, Count One also asserts that Caliber's conduct violated various provisions of the "Federal Fair Debt Collection Practices Act." ECF 1-2, ¶ 67. The Complaint contains other references to federal law. *See* ¶¶ 13, 14. However, defendant does not claim that these sparse references to federal law provide the Court with federal question jurisdiction, pursuant to 28 U.S.C. § 1331.

In Count II, Ms. Goff asserts violations of the Maryland Usury Statute on behalf of the "Usury Convenience Fee Class" (alternatively, the "Usury Class") as well as in her individual capacity. Relevant here, plaintiff alleges that Caliber imposed "fees related to a borrower's partial or full payment" on a loan, in violation of C.L. § 12-105(d). *Id.* ¶¶ 79-82. The Complaint defines the Usury Class as follows, *id.* ¶ 47(a):

> Those persons in the State of Maryland for whom for whom (i) Caliber has acted as a maker of a mortgage loan related to a secured, mortgage loan at any time or a mortgage servicer of a mortgage loan owner related to a secured, mortgage since January 1, 2019; (ii) where Caliber charged their mortgage loan accounts with convenience fees for it accepting whole or partial payments; and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

According to the Complaint, the MCDCA Class and the Usury Class each comprise more than 100 persons who either received mortgages from or had their mortgages serviced by Caliber, as shown by public records of "complaints . . . filed against Caliber." *Id.* ¶ 52. Ms. Goff asks to be named the class representative for the MCDCA Class and the Usury Class. *Id.* at 30.

Count III asserts an individual claim under the MCPA. In brief, Ms. Goff alleges that Caliber's various "acts and omissions" regarding "Ms. Goff's efforts to mitigate and avoid the negative consequences of foreclosure" constitute unfair and deceptive trade practices, in violation of C.L. § 13-301(1)(3) and § 13-303(4)(5). *Id.* ¶ 90; *see id.* ¶¶ 87-91.

The Complaint's "Prayer for Relief" specifies the damages plaintiff seeks. For Count One, Ms. Goff requests actual damages and "reasonable attorney fees . . . in a total sum in excess of $75,000 (on a[n] aggregated basis for the Plaintiff and the [MCDCA Class] members)." *Id.* at 29. For Count II, plaintiff requests $500 per violation of C.L. § 12-105(d) and "reasonable attorney fees . . . in a total sum in excess of $75,000 (on a[n] aggregated basis for the Plaintiff and [Usury

Class] member[s]).  *Id.* at 30.  For Count III, plaintiff requests actual damages and "reasonable attorney fees . . . in a total sum of no more than $65,000." *Id.*

As noted, defendant timely removed the case to this Court.  The Motion followed.

Additional facts are included in the Discussion.

## II.     Discussion

Ms. Goff contends that this Court lacks subject matter jurisdiction over the suit and therefore the Court must remand the case to State court.  In plaintiff's view, neither diversity jurisdiction nor CAFA jurisdiction applies here.  Plaintiff asserts that the Court lacks jurisdiction under CAFA because the Notice did not sufficiently allege that CAFA's amount-in-controversy requirement of $5 million is satisfied.  *See* § 1332(d)(2); ECF 11-1 at 11-16.  And, plaintiff insists that defendant is not entitled to leave to amend the Notice.  *Id.*  As to diversity jurisdiction, plaintiff contends that neither her individual claims nor those of any one putative class member satisfies the jurisdictional amount-in-controversy requirement of $75,000 under 28 U.S.C. § 1332(a).  *See* ECF 11-1 at 7-11.  Plaintiff does not dispute that the other elements of diversity jurisdiction and CAFA jurisdiction, respectively, have been met.

### A.     Subject Matter Jurisdiction Generally

"[B]efore a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court."  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  In *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014), the Fourth Circuit observed: "Fundamental to our federal system is the principle that '[f]ederal courts are courts of limited jurisdiction.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (alteration in *Hanna*); *see United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.), *cert. denied*, 558 U.S. 875 (2009).  Thus, a federal

district court may only adjudicate a case if it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.*, *Inc.*, 545 U.S. 546, 552 (2007).  Indeed, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Hanna*, 750, F.3d at 432.

Notably, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  If a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter." *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008).  And, pursuant to Fed. R. Civ. P. 12(h)(3), "the court must dismiss the action" if it determines that the court lacks subject matter jurisdiction.  *See also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).  This is because "jurisdiction goes to the very power of the court to act." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).

Further, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (emphasis in *Poole*) (citing *Kokkonen*, 511 U.S. at 377).  Moreover, "[s]ubject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court sua sponte, at any time prior to final judgment." *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *see also McCulloch v. Vélez*, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction."); *Snead v. Board of Educ. of Prince George's County*, 815 F. Supp. 2d 889, 893-94 (D. Md. 2011).

Congress has conferred jurisdiction on the federal courts in several ways.  To provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or

treaties of the United States.  *See* 28 U.S.C. § 1331; *see also Exxon Mobil Corp.,* 545 U.S. at 552; *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012); *see also* U.S. Constitution Art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . .").  This is sometimes called federal question jurisdiction.

In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000.  *Exxon Mobil Corp.,* 545 U.S. at 552; *see* 28 U.S.C. § 1332.  Article III, § 2 of the Constitution permits a federal court to decide "Controversies . . . between Citizens of different States."  *Navy Federal Credit Union v. Ltd. Financial Services LP*, ___ F.3d ___, 2020 WL 5014866, at *3 (4th Cir. Aug. 20, 2020).  Of relevance here, diversity jurisdiction  "requires complete diversity among  parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant."  *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss,* 7 U.S. 267 (1806).

Under the "well-pleaded complaint" rule, facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint."  *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)).  Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction."  *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz*, 599 U.S. at 95; *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).

### B.     The Class Claims

The Notice alleges that Count I and Count II, brought on behalf of putative classes, satisfy the numerosity, diversity, and amount-in-controversy jurisdictional requirements under CAFA. ECF 1 at 5.  With respect to the amount in controversy for the two counts, the Notice states:

> The amount in controversy requirement under CAFA is also satisfied. Under 28 U.S.C. § 1332(d), a class action is removable if the aggregate amount in controversy is greater than $5 million, exclusive of interest and costs.  *See* U.S.C. § 1332(d)(2).

> "Because no antiremoval presumption attends cases invoking CAFA, a defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold" of exceeding $5 million at the time of removal.  *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (emphasis added).

Ms. Goff disputes that the Notice plausibly alleges satisfaction of CAFA's $5 million jurisdictional threshold.  ECF 11-1 at 11-16.  Plaintiff notes that 28 U.S.C. 1446(a) effectively imposes on notices of removal a plausibility requirement similar to that which governs pleadings under Fed. R. Civ. P. 8(a).  *See Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008).  In her view, the Notice contains a legal conclusion, rather than a plausible allegation, as to the amount in controversy for the class claims.  Moreover, plaintiff contends that the Court lacks authority to grant defendant's request for leave to amend the Notice.  ECF 11-1 at 14-16.

Defendant counters that the allegation in the Notice regarding the jurisdictional amount is plainly sufficient.  In the alternative, Caliber asks the Court either to treat the Opposition as a *de facto* amendment to the Notice or grant Caliber leave to amend.  ECF 16 at 16 n.3.

Further, defendant claims that it has presented evidence showing that the amount in controversy for the class claims exceeds $5 million.  In particular, Caliber appended to the Opposition the Declaration of Justin Nezda (the "Nezda Declaration"), a Senior Vice President of

Asset Performance at Caliber, which addresses the amount at issue for each of the Complaint's three counts, based on his review of the Complaint as well as "Caliber's records and data." ECF 16-1 at 3. Nezda attests that the Usury Class could recover up to $44 million and that the MCDCA class could recover upwards of $500,000. *Id.* at 4. Accordingly, defendant maintains that the Court has CAFA jurisdiction with respect to both class claims. ECF 16 at 18.

### 1.      Sufficiency of the Notice of Removal

CAFA grants subject matter jurisdiction to district courts over class actions in which the aggregate number of members of the plaintiff class is 100 or more, any member of the plaintiff class is a citizen of a state different from any defendant, and the aggregate amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2)(A), (5)(B).

A "defendant invoking CAFA . . . must file a notice of removal in the proper district court 'containing a short and plain statement of the grounds for removal.'" *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (quoting 28 U.S.C. § 1446(a)). As the defendant must allege federal jurisdiction when removing an action from State court, it is the defendant's burden to "alleg[e] that CAFA jurisdiction exists." *Scott*, 865 F.3d at 194.

With respect to the amount in controversy requirement, the Supreme Court's decision in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014), provides guidance. The *Dart* Court stated that, in the event that the "complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* at 84 (citing 28 U.S.C. 1446(c)(2)(A)). And, as "no antiremoval presumption attends cases invoking CAFA . . . a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89.

I agree with Ms. Goff that the Notice's allegation as to CAFA's jurisdictional threshold is not sufficient to satisfy the plausibility standard articulated in the case law. As indicated, the Notice does not contain a single factual allegation to substantiate the claim that the amount in controversy exceeds $5 million. Notably, the Nezda Declaration was not submitted with the Notice. Rather, it is an exhibit to the Opposition.

The Notice is decidedly more bare-bones with respect to the amount in controversy than other notices of removal that courts have reviewed. For example, in *Scott*, 865 F.3d 189, Cricket, the defendant communications company, removed the putative class action complaint to federal court, invoking CAFA. *Id.* at 192. The complaint concerned the company's sales of certain cell phones to Maryland citizens during a specified time period. *Id.* The notice of removal alleged that the company "sold 'at least 50,000 . . . telephones that were shipped to and activated in Maryland.'" *Id.* at 195. Further, Cricket attached to the notice of removal a declaration of a former employee, which attested to the number of phones sold in Maryland and that the amount in controversy exceeded $10 million. *Id.* at 192. The plaintiff moved to remand, contending, among other things, that the notice of removal was insufficient. *Id.*

The district court found that Cricket "sufficiently alleged federal jurisdiction under CAFA" and the Fourth Circuit agreed. *Id.* at 193, 195. The Fourth Circuit reasoned: "Cricket's short and plain statement contains enough 'factual content that allows the court to draw the reasonable inference' that the amount in controversy exceeds [$5 million]." *Id.* at 195 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In contrast, Caliber's Notice does not contain any specific factual allegations, let alone identify the total amount that Ms. Goff and putative class members paid in convenience fees, from which the Court could infer "the pecuniary amount" that a judgment against Caliber "would

produce." *Dixon*, 290 F.3d at 710.  Moreover, because the Nezda Declaration was appended to the Opposition, it cannot support the threshold question of the Notice's sufficiency.

This case is likewise distinguishable from *Sayre v. Westlake Srvs., LLC*, ELH-15-687 2015 WL 4716207 (Aug. 7, 2015), which defendant characterizes as "directly on point."  ECF 16 at 15. In *Sayre*, the Court did not directly address the sufficiency of the notice of removal, as the plaintiff did not raise a sufficiency challenge in the motion to remand.  Rather, the plaintiff contested the weight of the defendant's evidence as to the $5 million threshold.  *See Sayre*, 2015 WL 4716207 at *1.  Further, the notice of removal in that case, which defendant has appended as an exhibit to the Opposition (ECF 16-2), contained more factual content than the Notice here.

The *Sayre* notice of removal alleged, *id.* at 2:

> The size of the expansive class proposed by Plaintiff, with no limits as to time or defenses, would include many hundreds of Westlake accounts. If the relief sought by Plaintiff – a declaration that Westlake could not collect anything from the putative class beyond the principal amount of each loan – were granted, the cost to Westlake in refunds and in uncollectible loan balances would easily exceed $5,000,000. Thus, the amount in controversy exceeds $5,000,000.

The notice of removal in *Sayre* gestured toward the basis for computing damages ("refunds" and "uncollectible loan balances") multiplied by the potential number of putative class members ("many hundreds").  Accordingly, the citation to *Sayre* does not aid defendant.

The facts here are more similar to those in *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730 (4th Cir. 2009).  There, the class action complaint did not request a specific dollar amount in damages, and the notice of removal "alleged that the amount in controversy exceeded $5,000,000." *Id.* at 732.  In response to the plaintiff's motion to remand, the defendant submitted a declaration containing specific factual assertions, including calculations, regarding the amount in controversy. *Id.* at 732-33.  The Fourth Circuit, like the district court, focused on the defendant's evidence rather than the allegation in the notice of removal.  However, *Bartnikowski* preceded the Supreme Court's

decision in *Dart*, 574 U.S. 81, which clearly stated that notices of removal must plausibly allege the basis for federal jurisdiction. Thus, *Dart* has foreclosed the path taken in *Bartnikowski*.

I conclude that the Notice does not satisfy *Dart*'s pleading standard for a notice of removal based on CAFA.

## 2.      Amendment of the Notice of Removal

The conclusion reached above does not end the inquiry. I turn to address defendant's request "that the Court treat th[e] Opposition as an amendment to the Notice of Removal or, alternatively, grant Caliber leave to amend the Notice of Removal to provide additional facts supporting the amount in controversy." ECF 16 at 16 n.3.

Where, as here, "the Court decides that a notice of removal is insufficient, it may look to 28 U.S.C. § 1653, which provides that 'defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.'" *Hall v. Coca-Cola Co.*, Case No. 2:18cv244, 2018 WL 4928976, at *4 (E.D. Va. Oct. 11, 2018).

In *Wood v. Crane Co.*, 764 F.3d 316, 323 (4th Cir. 2014), the Fourth Circuit discussed the standard that governs requests to amend a notice of removal after the thirty-day window, based upon 28 U.S.C. §§ 1446, 1653. The Court acknowledged "a split among [the Fourth Circuit's] district courts." *Id.* at 323. Some district courts have taken a "'strict constructionist'" approach (*i.e.*, less permissive), while others have adopted a "'liberal'" approach (*i.e.*, more permissive). *Id.* (quoting *Covert v. Auto. Credit Corp.*, 968 F.Supp.2d 746, 750 (D. Md. 2013)). The *Wood* Court reasoned, 764 F.3d at 323:

> In our view, these two schools differ only in verbiage. The upshot is the same: after thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal. Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis.

And, it added: "The trick lies in placing a case within one of those two categories." *Id.*

By way of illustration, the *Wood* Court noted two examples of "technical" amendments to notices of removal appropriately permitted in prior cases.  In one case, the allegation that the defendant was a "Kentucky corporation" was replaced with one "stating that Kentucky was merely the party's 'principle place of business.'"  *Wood*, 764 F.3d at 323 (citing *Nutter v. New Rents, Inc.*, 945 F.2d 398, at *2 (4th Cir. 1991) (unpublished table decision)).  In another case, the notice of removal alleged that the plaintiff's domicile was Ohio and the amendment changed it to Pennsylvania; "either state would have supported diversity jurisdiction."  *Wood*, 764 F.3d at 323 (citing *Yarnevic v. Brink's, Inc.*, 102 F.3d 753 (4th Cir. 1996)).

Subsequent district court decisions have applied and elaborated upon the distinction that the *Wood* Court drew between permissible and impermissible amendments — that is, between, amendments "that correct allegations already present in the notice of removal" and those "furnishing new allegations of a jurisdictional basis."  *Wood*, 764 F.3d at 323.  In this regard, *Hall*, 2018 WL 4928976, at *1, 9-11, is instructive.

In *Hall*, the defendant's notice of removal alleged so-called federal enclave jurisdiction. *Id.* at *1.  After determining that the notice was insufficient, the court in the Eastern District of Virginia evaluated the defendant's request for leave to amend.  *Id.* at *9.  Despite invoking federal enclave jurisdiction, the notice did not mention two "key elements" of such jurisdiction.  *Id.* at *9-11.  The court reasoned that if the defendant were granted leave to amend and correct these omissions, the defendant would merely "add facts to the existing basis" for jurisdiction, rather than "allege an entirely new basis."  *Id.* at 11.  The court explained that such an amendment is permissible under the *Wood* standard.  It said: "Though strict cases prior to *Wood*, such as *Covert*, suggest that failing to allege an element of jurisdiction is fatal, post-*Wood* case law seems to permit amendments unless they allege a completely new basis for jurisdiction."  *Id.* (collecting cases).

-15-

The *Hall* Court's formulation clarifies the issue presented here.  In this case, the Notice clearly asserts CAFA jurisdiction and alleges that the elements of such jurisdiction are satisfied, albeit without any supporting factual allegations.  Defendant seeks to amend the Notice to include factual support, or to have the Court treat the Opposition and the accompanying Nezda Declaration as a *de facto* amendment to the Notice.  Significantly, defendant does not seek to "allege a completely new basis for jurisdiction." *Hall*, 2018 WL 4928976 at *11.  Rather, Caliber wishes to correct a deficiency in an "allegation[] already present in the notice of removal." *Wood*, 764 F.3d at 323.

Cases from this district have reasoned much like the court in *Hall*.  *See, e.g.*, *Lay v. Caesars Enter. Servs., LLC*, CCB-18-96, 2018 WL 1947050, at *3 (D. Md. Apr. 25, 2018) (granting motion to amend notice of removal where notice asserted diversity jurisdiction but omitted citizenship of each of defendant LLC's members, reasoning that omission was "a procedural defect"); *The Yellow Cab Co. v. Uber Techs., Inc.*, RDB-14-2764, 2015 WL 4987653, at *3 (D. Md. Aug. 19, 2015) (granting motion to amend where defendant sought to add "label . . . to describe the arguments already present in the Notice of Removal," and thus "merely correct[] a technical omission, rather than add[] a new jurisdictional basis."); *see also Hooker v. Tunnell Gov't Servs. Inc.*, GJH-18-2352, 2019 WL 651747, at *6 (D. Md. Feb. 14, 2019).

In support of her position, plaintiff cites *Rutledge v. Frontline Asset Strategies, LLC*, 2019 WL 6883729 (S.D.W. Va. Dec. 17, 2019).  But, *Rutledge* is distinguishable from *Hall*.  In *Rutledge*, the court denied a motion to amend a notice of removal, where the notice alleged diversity jurisdiction and the amendment sought to add allegations supporting CAFA jurisdiction. *Id.* at *1-2.

Ms. Goff also asserts that the Opposition "does not even attempt to distinguish *Covert* or *Wood* from this case." However, *Wood* controls, not *Covert*, 968 F.Supp.2d 746. Moreover, the application of the *Wood* standard is fact-sensitive, as the Fourth Circuit intimated in noting that "[t]he trick lies" in categorizing the case at hand. *Wood*, 764 F.3d at 323. Indeed, the facts in *Wood* were highly idiosyncratic, and plaintiff does not attempt to address them.

In my view, it is appropriate to allow Caliber to amend the Notice.[6] Further, I shall treat the Opposition and the exhibits appended to it, including the Nezda Declaration, as amendments to the Notice. *See Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) (treating a petition for removal "as if it had been amended to include the relevant information" in later filings, citing 28 U.S.C. § 1653); *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3rd Cir. 2003) (reasoning similarly).

### 3.      Remaining CAFA Analysis

Plaintiff has not challenged Caliber's evidence of the amount in controversy. In both the Motion and the Reply, she has instead focused exclusively on the sufficiency of the Notice and Caliber's argument regarding amendment of the Notice. *See* ECF 11-1 at 11-16; ECF 22 at 1-8. Nevertheless, I am mindful of my "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp.*, 559 U.S. at 94. Accordingly, I briefly address Caliber's evidence.

"If the plaintiff challenges removal . . . the defendant 'bears the burden of *demonstrating* that removal jurisdiction is proper.'" *Scott*, 865 F.3d at 194 (quoting *Strawn*, 530 F.3d at 297) (emphasis in *Scott*). "To resolve doubts regarding a defendant's asserted amount in controversy, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the

---

[6] As noted, the Notice also alleged diversity jurisdiction, which is discussed, *infra*.

amount-in-controversy requirement has been satisfied.'" *Id.* (quoting *Dart Cherokee*, 574 U.S. at 82). To determine whether the amount in controversy exceeds the CAFA jurisdictional threshold, "class members' claims must be aggregated." 15A Moore's Federal Practice – Civil § 102.108(4)(a)(i) (3d. Ed. 2020) (citing 28 U.S.C. § 1332(d)(6)).

In the Fourth Circuit, "it is settled that the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce . . . .'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (citation omitted). A district court may "resolve the jurisdictional facts in dispute by considering . . . affidavits." *United States ex rel. Vuyyuru*, *supra*, 555 F.3d at 348; *see Base Metal Trading, Ltd.*, *v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002).

As noted, the Nezda Declaration calculated the amount at issue for each of the Complaint's three counts, based upon Nezda's review of "Caliber's records and data." ECF 16-1 at 3. With respect to the Usury Class, Nezda attests that between January 1, 2019 (the start-date of the Usury Class, as defined in the Complaint) and August 17, 2020 (the date of the Nezda Declaration), Caliber collected "87,645 separate convenience fee payments from borrowers in Maryland." *Id.* As Count II of the Complaint seeks $500 for each of those fee payments, Nezda determined that the amount in controversy for Count II totals approximately $44 million, excluding attorney's fees. *Id.* at 3-4. With respect to the MCDCA class, the Nezda Declaration states that during the relevant time period (beginning October 1, 2018), "borrowers in Maryland paid $500,388.44 in convenience fees to Caliber." *Id.* at 4.[7]

---

[7] The Nezda Declaration's determinations regarding the amount in controversy for Count III, brought by plaintiff in her individual capacity, are not germane to the CAFA analysis.

The Nezda Declaration, which is essentially uncontested, raises no red flags.[8] Accordingly, I find that Caliber has demonstrated by a preponderance of the evidence that the amount in controversy for Count II (the Usury Class claim) exceeds the $5 million jurisdictional threshold.

Notably, defendant's evidence plainly shows that the threshold is not met for Count I (the MCDCA class claim). Neither party acknowledges this. In the Opposition, defendant adds the amounts at issue for Count I and Count II, as indicated by the Nezda Declaration, and reasons that the resulting sum establishes the Court's jurisdiction over both of the class claims. *See* ECF 16 at 18. In other words, defendant suggests that the Court should aggregate the relevant amounts for Count I and Count II to establish CAFA jurisdiction over the two claims brought on behalf of two distinct classes.

Section 1332(d)(6) of 28 U.S.C. provides: "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." The statute plainly permits aggregation of claims by members of a single class. Here, defendant proposes aggregating the claims of members of two classes that, though similar, are nonetheless defined separately in the Complaint. In addressing a similar contention, the court in *McFarland v. Capital One, N.A.*, TDC-18-2148, 2019 WL 2330872, at *3 (D. Md. May 31, 2019), explained:

> This aggregation principle has not been adopted by the Fourth Circuit or any other circuit. In *Marple v. T-Mobile Central LLC*, 639 F.3d 1109 (8th Cir. 2011), the United States Court of Appeals for the Eighth Circuit declined to . . . establish a rule permitting the amounts in controversy from separate but largely identical class action lawsuits to be aggregated for purposes of the jurisdictional threshold because

---

[8] As noted, in conjunction with the Motion to Remand plaintiff requested the opportunity to conduct limited jurisdictional discovery in the event the Court determines that the Notice is sufficient. Then, Caliber submitted evidence regarding the jurisdictional amount, together with the Opposition. In the Reply, Ms. Goff did not dispute the evidence. *See* ECF 22 at 1-8.

"Congress would have . . . outlined how courts should aggregate between class actions had it intended for courts to do so." *Id.* at 1110.

Further, the Ninth Circuit has reasoned that the provisions of 28 U.S.C. § 1332(d) "do not speak to claims that are not part of the class action itself." *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1060 (9th Cir. 2015).

Accordingly, the Court does not have original jurisdiction over Count I, brought on behalf of the MCDCA class. However, Count I may qualify under principles of supplemental jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a "civil action" within the meaning of § 1367(a) . . . Once the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action.")

Section 1367(a) of 28 U.S.C. grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Claims form part of the same case or controversy if they "derive from a common nucleus of operative fact," such that a plaintiff would "ordinarily be expected to try them all in one judicial proceeding," regardless of their federal or state character. *Issac v. North Carolina Dept. of Transp.*, 192 F. App'x 197, 199 (4th Cir. 2006) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Nevertheless, supplemental jurisdiction is discretionary, and a court may decline to exercise it for a variety of reasons. *See* 28 U.S.C. § 1367(c) (enumerating bases for declining to exercise supplemental jurisdiction). These reasons include the fact that a state law claim "raises a novel or complex issue of State law," § 1367(c)(1); the state law "claim substantially predominates

over the claim or claims over which the district court has original jurisdiction," § 1367(c)(2); the "district court has dismissed all claims over which it has original jurisdiction," § 1367(c)(3); and "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c)(4).

Here, the MCDCA Class claim (Count I) and the Usury Class claim (Count II) arise from the same nucleus of operative facts.  Both counts concern Caliber's alleged collection of so-called convenience fees in conjunction with mortgage payments.  *Accord Isaac*, 192 F. App'x at 199-200 (affirming exercise of supplemental jurisdiction over claims based upon all the same allegations as claims over which Court had original jurisdiction).  Further, plaintiff does not contend that Count I "raises a novel or complex issue of State law" or that Count I would "substantially predominate[]" over Count II.  Indeed, the parties did not even address the issue of supplemental jurisdiction.

I discern no reason to require Caliber to defend in State court against one class claim concerning convenience fees, while defending in federal court against another class claim concerning the same underlying factual allegations and founded on State law.

Based on the foregoing, I shall deny the Motion to Remand as to Count I and Count II.

### 4.  Jurisdictional Discovery Motion

The final issue pertaining to the class claims is Ms. Goff's Jurisdictional Discovery Motion.

In short, in the Jurisdictional Discovery Motion plaintiff requested leave to conduct a one-hour video deposition, pursuant to Fed. R. Civ. P. 30(b)(1), of (1) Caliber's "'officer, director or managing agent' who is responsible [for] Caliber's convenience fee[s]," and (2) Caliber's "'officer, director or managing agent' who is responsible for" certain "records retention policies

and practices" and who has the capability "to produce summary reports" of various records.  ECF 12 at 4-5.

As noted, *supra* n.8, the Reply did not take issue with the calculations in the Nezda Declaration or the records underlying them.  Nor did the Reply revisit plaintiff's claim in the Jurisdictional Discovery Motion that "there are no plausible facts before the Court" to make a conclusion regarding the amount in controversy.

Therefore, I reach the same conclusion that I reached in *Sayre*, 2015 WL 4716207 at *9, a case that both parties discuss.  Granting the Jurisdictional Discovery Motion would effectively permit "a jurisdictional fishing expedition that would delay the progress of this case.  However, plaintiff may explore the amount in controversy as part of the ordinary discovery process.  And, if discovery establishes that the jurisdictional amount has not been met, the Court will entertain another motion to remand for lack of jurisdiction."  *Id.*

### C.     The Individual Claims

As noted, in addition to claiming federal jurisdiction under CAFA, the Notice of Removal also invoked general diversity jurisdiction.  ECF 1 at 3-5.  Defendant alleged that complete diversity exists between Ms. Goff and Caliber; Caliber is not a citizen of Maryland; and plaintiff's individual claims exceed the $75,000 amount-in-controversy requirement for diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a).  *Id.*  As to the amount in controversy, the Notice asserted that the amount requested in the Complaint's *ad damnum* clause "exceeds $75,000."  *Id.* at 4.

In the Motion to Remand, plaintiff contests Caliber's allegations regarding the amount in controversy.  Plaintiff notes that the Complaint requested "no more than $65,000" for Count III, which was brought in plaintiff's individual capacity, and that the Complaint requested over

$75,000 "on a[n] aggregated basis" for each of the class claims.  Therefore, according to plaintiff, the amount in controversy as to Ms. Goff individually does not exceed $75,000, and Caliber arrived at a contrary conclusion by impermissibly aggregating plaintiff's class claims with her individual claim.  *See* ECF 11-1 at 6-11.

In response, Caliber asserts: "Plaintiff's purported attempt to limit her recovery to 'no more than $65,000' under Count [III]" can be disregarded because it violates Maryland Rule 2–305 (2013), which requires that "a demand for a money judgment that does not exceed $75,000 shall include the amount of damages sought."  *See* ECF 16 at 20.  In defendant's view, Count III's request for damages "in a total sum of no more than $65,000" does not comply with Rule 2-305. *Id.*  Moreover, defendant contends that relying on the Complaint's attempt to cap damages at $65,000 for the purposes of determining the amount in controversy would ignore the fact that, under Maryland law, a plaintiff is not precluded from recovering in excess of her *ad damnum* clause.  *Id.* at 21 (citing *Baron v. Directv, LLC*, JKB-16-3145, 2016 WL 6078263, at *1-3 (D. Md. Oct. 17, 2016)).

Caliber then claims that "it is a legal certainty" that plaintiff would recover more than $75,000 if she prevails on Count III, based on attorney's fees alone.  ECF 16 at 22.  To that end, defendant appended to the Opposition two exhibits, each containing an apparent "fee statement" of plaintiff's counsel in separate lawsuits against mortgage servicers.  ECF 19 (under seal); ECF 20 (under seal).  Further, defendant urges that adding the amount individually recoverable by plaintiff under Counts I and II to the $65,000 requested under Count III would clear the jurisdictional threshold.  ECF 17 at 24-26.

In the Reply, Ms. Goff essentially doubles down on her initial argument that, as "master of her claims," she chose to explicitly cap the amount recoverable on Count III to $65,000.  *See* ECF

22 at 9.   To that end, plaintiff highlights the analysis of a prior Memorandum that I wrote, *Depasquale v. SW Linear Inv. Grp., LLC*, ELH-15-00158, 2015 WL 575419, at *1-3 (D. Md. Feb. 10, 2015).

Traditionally, in order to establish the amount in controversy for purposes of diversity jurisdiction, "the sum claimed by plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938); *accord Choice Hotels Intern., Inc. v. Shiv Hospitality, L.L.C.,* 491 F.3d 171, 176 (4th Cir.2007) ("The black letter rule 'has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in "good faith."'") (quoting *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961)); *Joy Family Ltd. Partnership v. United Financial Banking Companies, Inc.,* ELH-12-3741, 2013 WL 4647321, at *6 (D. Md. 2013); *see also Dow v. Jones,* 232 F.Supp.2d 491, 497–98 (D. Md. 2002) ("It is well established that the sum claimed in the plaintiff's complaint determines the amount in controversy, barring bad faith or the legal impossibility of recovering such an amount.").   Indeed, "the Supreme Court has held that a plaintiff with a claim potentially exceeding $75,000 'may resort to the expedient of suing for less than the jurisdictional amount, and though [the plaintiff] would justly be entitled to more, the defendant cannot remove.'"   *Mary L. Martin, Ltd. v. State Auto Property and Cas. Ins. Co.,* RDB-13-1089, 2013 WL 2181206, at * 2 (D. Md. May 17, 2013) (quoting *St. Paul Mercury Indem. Co.,* 303 U.S. at 294).

However, in 2011 Congress "amended the procedure for removing certain civil actions" based on diversity jurisdiction.   *Osia v. Rent-a-Ctr., Inc.*, DKC-15-1200, 2015 WL 3932416, at *2 (D. Md. June 25, 2015).   Section 1446(c)(2) of 28 U.S.C. states:

(2) If removal of a civil action is sought on the basis of the jurisdiction conferred
by section 1332(a), the sum demanded in good faith in the initial pleading shall be
deemed to be the amount in controversy, except that--

    (A) the notice of removal may assert the amount in controversy if the initial
    pleading seeks--

        (i) nonmonetary relief; or

        (ii) a money judgment, but the State practice either does not permit
        demand for a specific sum or permits recovery of damages in excess
        of the amount demanded; and

    (B) removal of the action is proper on the basis of an amount in controversy
    asserted under subparagraph (A) if the district court finds, by the
    preponderance of the evidence, that the amount in controversy exceeds the
    amount specified in section 1332(a).

The upshot is that "'the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, subject to certain exceptions.'" *Osia*, 2015 WL 3932416 at *2 (citation omitted). The Court must evaluate whether the statutory exceptions apply here. As the Complaint clearly requests "a money judgment" rather than "nonmonetary relief," the question is whether this case falls within the ambit of § 1446(c)(2)(A)(ii), (B).

I begin with the disjunctive second clause of § 1446(c)(2)(A)(ii). As to whether "State practice . . . does not permit demand for a specific sum," the answer is clear. Maryland "practice *permits* demand for a specific sum; indeed, Maryland *requires* that a demand for a money judgment that does not exceed $75,000 include the amount of damages sought." *Osia*, 2015 WL 3932416 at *4 (citing and discussing Maryland Rule 2-305) (emphasis in original). Still, § 1446(c)(2)(A)(ii) can be satisfied if Maryland practice "permits recovery of damages in excess of the amount demanded."

For purposes of § 1446(c)(2)(A)(ii), Maryland practice does not so permit. As the *Osia* Court explained, 2015 WL 3932416, at *3:

Under Maryland practice, a party may not obtain more than the amount sought in a complaint. *See Falcinelli v. Cardascia,* 339 Md. 414, 423, 663 A.2d 1256 (1995) ("Defendant is quite correct in asserting that Maryland case law has uniformly treated the ad damnum as a limitation on recovery."); *Scher v. Altomare,* 278 Md. 440, 442, 365 A.2d 41 (1976) ("Of course, the recovery, if any, by the plaintiff

cannot exceed in nature or amount either the damage proved or the sum claimed in the *ad damnum,* whichever is the lesser."); *Bijou v. Young–Battle,* 185 Md.App. 268, 290–91, 969 A.2d 1034 (2009) ("[A]s a general rule, a circuit court, in the absence of an amendment to the *ad damnum,* commits error by not reducing the judgment to the amount of the *ad damnum* when the defendant moves for remittitur that directly attacks that part of the judgment in excess of the *ad damnum.*").

*See Ritterstein v. IAP Worldwide Servs., Inc.*, RDB-18-2377, 2018 WL 4914199, at *2 (D. Md. Oct. 10, 2018) (same); *Brennan v. Stevenson*, JKB-15-2931, 2015 WL 7454109, at *2 (D. Md. Nov. 24, 2015) (same).

That said, Caliber emphasizes that under Maryland law courts may permit post-verdict amendments to complaints. Maryland Rule 2–341(b) governs amendment of pleadings with leave of court. A Committee Note states: "The court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned." *Id.* (citing *Falcinelli v. Cardascia*, 339 Md. 414, 663 A.2d 1256 (1995)); *see Gallagher v. Federal Signal Corp.*, 524 F.Supp.2d 724, 728 (D. Md. 2007) (stating that Maryland Rule 2–341(b) allows a plaintiff "to seek leave to amend [her] complaint to reflect a higher *ad damnum* amount in the event that a jury awards more than" the amount demanded in the complaint).

Critically, however, "[p]ermission to amend the *ad damnum* clause is discretionary . . . there is no requirement that the court permit an amendment." *Gallagher*, 524 F. Supp. 2d at 728. Thus, if a plaintiff deliberately requests damages of a sum short of $75,000 to avoid removal to federal court, such a plaintiff acts at his or her peril if damages in excess of that sum are awarded, because a Maryland court is not required to permit amendment of the ad damnum clause. Because "it is not Maryland's practice *automatically* to permit" recovery in excess of the amount demanded, in contrast to other states' practices, Maryland practice does not fall within the reach of § 1446(c)(2)(A)(ii). *Osia*, 2015 WL 3932416 at *4 (emphasis added) (collecting federal district

court decisions that discuss the practices of other states, under which judgments greater than the amount demanded have been affirmed by appellate courts).

Accordingly, § 1446(c)(2)(B) would seem to dictate that the amount in controversy for Count III is the sum demanded "in good faith" in the Complaint—namely, "a total sum of $65,000," including attorney's fees as permitted by the MCPA. *See* ECF 1 at 30. Yet, whether the Court has diversity jurisdiction over plaintiff's individual claims turns not only on the amount demanded as to Count III, but also on the sums plaintiff requested in an individual capacity under Count I and Count II. "A single plaintiff may aggregate all claims joined under [Federal] Rule [of Civil Procedure] 18, related and unrelated, against a single defendant in calculating the amount in controversy." 15A Moore's Federal Practice – Civil § 102.108 (3d. ed. 2020). And, the Complaint conspicuously omits any mention of the amount of Ms. Goff's individual claims, brought as a putative class member, under the first two counts. In light of these omissions, it is appropriate to consider whether defendant has demonstrated that the total amount demanded in the Complaint on behalf of plaintiff individually exceeds the jurisdictional floor.

As noted, defendant advances essentially this line of reasoning in the Opposition. *See* ECF 16 at 24-26. Plaintiff contends that her individual claim in Count III cannot be aggregated with her individual claims brought as a putative class member under Counts I and II. *See* ECF 11-1 at 6-11.

Caliber contends that, even if the amount sought in Count III is limited to $65,000, the total amount that plaintiff seeks in an individual capacity in Counts I and II exceeds $10,000, the remaining amount needed to clear the jurisdictional hurdle for diversity. First, defendant notes that for Count II, the Complaint explicitly requests $500 for each convenience fee that defendant collected from Usury Class members, and alleges that defendant collected convenience fees from

Ms. Goff on twelve specific dates. *See* ECF 16 at 16; ECF 1-2 at 30, ¶¶ 20, 83. According to the logic of the Complaint, then, Ms. Goff seeks $6,000 under Count II, bringing the running total of her individual demands to $71,000.

It is more likely than not that plaintiff could clear the remaining hurdle of $4,000.01 should she prevail on Counts I and II. After all, "[e]stimating the amount in controversy is not nuclear science." *Scott*, 865 F.3d at 196 (quoting *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014)). As noted in the Complaint, the MCPA permits the recovery of reasonable attorney's fees. C.L. § 13-408; *see* ECF 1-2 at 29. "When Maryland law permits recovery of attorneys' fees, 'potential attorneys' fees should be considered in determining whether the amount in controversy in a diversity action exceeds the jurisdictional threshold.'" *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) (cleaned up) (quoting *Francis v. Allstate Ins. Co.*, 869 F. Supp. 2d 663, 669 (D. Md. 2012)). Given the issues involved and the facts of this dispute, the attorney's fees that Ms. Goff is likely to incur in litigating Counts I and II are likely to exceed $4,000, especially as part of a larger, more complex effort to prosecute two class actions. *Cf. id.* ("The complexity of the case is sufficient to establish that it is more likely than not that the attorney's fees likely to be incurred . . . when coupled with the amount they expended to defend [a related] action, will exceed the jurisdictional threshold.")

### III.     Conclusion

For the foregoing reasons, I shall deny the Motion to Remand (ECF 11) and the Jurisdictional Discovery Motion (ECF 12). I shall also deny as moot the "Motion for Extension of Time to File Motion to Remand & Request for Limited Jurisdictional Discovery" (ECF 3).

An Order follows.

Date: October 21, 2020                                     /s/
                                                    Ellen L. Hollander

United States District Judge